```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
```

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER, | : | |
| Plaintiff, | : | **REPORT AND RECOMMENDATION TO THE HONORABLE** |
| - against - | : | **JOHN F. KEENAN**[*] |
| CARDUCCI LEATHER FASHIONS, INC., | : | 04 Civ. 497 (JFK)(FM) |
| IRFAN GOKOLAN, BONINI ITALIAN HANDBAGS, INC. and JOHN DOES 1-10, | : | |
| Defendants. | : | |

```
-----------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/21/2009

**FRANK MAAS**, United States Magistrate Judge.

I.   Introduction

In this action, plaintiff Louis Vuitton Malletier ("Louis Vuitton") alleges that defendant Bonini Italian Handbags, Inc. ("Bonini"), a New York corporation, unlawfully sold or attempted to sell counterfeit versions of Louis Vuitton's trademarked handbags, in violation of the Lanham Act and New York law.

By order dated September 20, 2007, Your Honor held that Louis Vuitton was entitled to a default judgment against Bonini and referred the matter to me for an inquest regarding damages. (See Docket No. 19). Unfortunately, because there was no separate order of reference, I did not learn of the referral until September 2008.

---

[*]   This Report and Recommendation was prepared with the assistance of Mai-Khoi Nguyen-Thanh, a student at the Washington University in St. Louis School of Law.

Thereafter, by order dated September 24, 2008, I directed Louis Vuitton to serve and file its inquest papers by November 25, 2008, and that Bonini respond by December 9, 2008. (Docket No. 20). Louis Vuitton complied with its deadline, but Bonini has not submitted any papers to this Court.

As set forth below, I now recommend that Louis Vuitton be awarded judgment against Bonini in the amount of $405,568.14, consisting of $400,000 in statutory damages and attorneys' fees and costs in the amount of $5,568.14.

II.     Standard of Review

In light of Bonini's default, Louis Vuitton's well-pleaded allegations concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim though the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency

Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  As set forth below, in this case both requirements have been met.

III.    Facts

Louis Vuitton's complaint and inquest papers establish as follows:

Louis Vuitton is a French corporation engaged in the business of importing, manufacturing, selling, and distributing various designer items, including luggage and handbags under federally registered trademarks.  (Am. Compl. ("AC") ¶ 7).

Bonini is a New York corporation engaged in the manufacture, importation, and sale of handbags and fashion accessories in this District and elsewhere.  (Id. ¶ 10).

This case concerns Louis Vuitton's trademarked "Epi Leather" handbags which feature a unique man-made textured pattern.  (Id. ¶ 13).  Louis Vuitton holds nine trademarks related to its Epi Leather products, which cover the Epi Leather design with and without color and with and without the logo "LV," as well as the design in blue, yellow, red, gold, black, green, and brown.  (Id. ¶ 13-14).  The first of these federal trademark registrations, for the "LV" logo Epi Leather design, was issued on September 3, 1991.  (Id. Ex. A).  Subsequent trademarks relating to the Epi Leather design were registered between 1995 and 1998.  (Id.).

When this action was commenced, Carducci Leather Fashions, Inc. ("Carducci"), was the sole named defendant.  (See Docket No. 1).  Subsequently, Louis Vuitton evidently learned that Bonini was the source of a counterfeit Epi Leather handbag

purchased from Carducci by an investigator.  (See Decl. of Charles A. LeGrand, Esq. ("LeGrand Decl."), dated Dec. 3, 2008, ¶ 4 & Ex. C).[2]  That handbag was green.  (Id.).

In or around September 2005, Bonini furnished Louis Vuitton or its counsel with invoices reflecting Bonini's sales of approximately $11,000 worth of goods to Carducci between March 30, 2001, and June 27, 2003.  (Id. Ex. B).  Although Bonini's "Spring 2003" handbag line included twenty-two infringing models, (see id. Ex. A), Bonini did not provide any invoices reflecting sales of most of these models.  Indeed, Bonini did not provide any invoices reflecting sales of its counterfeit Louis Vuitton to any customers other than Carducci.  (Id. Ex. B; Pl.'s Proposed Findings of Fact and Conclusions of Law ("Pl.'s PFOF") ¶¶ 18-19).

In March 2006, Louis Vuitton amended its complaint to add Irfan Gokolan ("Gokolan"), Carducci's principal, and Bonini as defendants.  (Docket No. 10).  Carducci and Gokolan thereafter settled their differences with Louis Vuitton.  (Docket No. 12).  Bonini, however, has never responded to either the amended complaint or Your Honor's order directing Bonini to show cause why a default judgment should not be entered. (Docket Nos. 18, 19).

---

[2]   Louis Vuitton's inquest papers include two declarations by Mr. LeGrand, both dated December 3, 2008.  (See Docket Nos. 23, 24).  The declaration, bearing Docket No. 23, relates exclusively to Louis Vuitton's attorneys' fees and costs and is hereinafter referred to as the "LeGrand Fee Decl."

IV.    Discussion

    A.    Lanham Act

        1.    Damages

Under the Lanham Act, a trademark owner may choose to recover statutory damages or actual damages in cases of infringement. 15 U.S.C. §§ 1117(c), (d). In its inquest papers, Louis Vuitton cryptically states that it "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . ., an award of statutory damages." (Pl.'s PFOF ¶ 84) (emphasis added). Its papers then go on to calculate actual damages. (Id. ¶¶ 86- 91). Louis Vuitton hence does not make clear whether it seeks statutory or actual damages. Since the potential statutory damages dwarf any possible actual damages, I have assumed that what Louis Vuitton in fact seeks to recover is statutory damages.

Pursuant to 15 U.S.C. § 1117(c), statutory damages may be awarded in the amount of

> 1) not less than $1000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> 2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

Here, by virtue of its default, Bonini has admitted Louis Vuitton's allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to Louis Vuitton's rights.  Cotton, 4 F.3d at 181.  Accordingly, Louis Vuitton is entitled to statutory damages in the amount of "not less than $1000" nor "more than $2,000,000" per counterfeit mark used by Bonini.  As noted above, Louis Vuitton's investigator purchased a green counterfeit handbag.  (LeGrand Decl. ¶ 4 & Ex. C).  Additionally, Bonini's invoices indicate that it sold Carducci black and red counterfeit bags.  (Id. Ex. B).  It follows that Bonini infringed at least four of Louis Vuitton's trademark registrations (including the Louis Vuitton trademark without any color designation).

The key question is consequently where along the broad statutory spectrum of $4,000 to $8,000,000 the award against Bonini should lie.  In the absence of any guidelines for determining the appropriate award in a case involving willful trademark violations, courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement.  See, e.g., Guess?, Inc. v. Gold Ctr. Jewelry, 997 F. Supp. 409, 411 (S.D.N.Y. 1998), rev'd on other grounds sub nom. Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631 (2d Cir. 1998); Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) (Motley, J.); Polo Ralph Lauren, L.P. v. 3M Trading Co., No. 97 Civ. 4824 (JSM) (MHD), 1999 WL 33740332, at *5 (S.D.N.Y. Apr. 19, 1999).

As those cases indicate, where, as here, a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others.  See, e.g., Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986); N.A.S. Import, Corp. v. Chenson Enters., 968 F.2d 250, 252 (2d Cir. 1992).

In Sara Lee, 36 F. Supp. 2d at 170, Judge Motley awarded statutory damages in the amount of $750,000 after estimating the defendants' ill-gotten gains and trebling them to "deter and punish a willful continuous course of infringements and defiance of the judicial process."  In several other cases involving trademark willful infringement, however, judges in this District have awarded only $25,000 per infringing mark or group of marks.  See Gucci Am., Inc. v. Gold Ctr. Jewelry, 997 F. Supp. 399, 401, 406 (S.D.N.Y. 1998) (awarding $25,000 per trademark violation sought by plaintiffs); Polo Ralph Lauren, 1999 WL 33740332, at *7 (awarding $25,000 per trademark violation in order to deter defendants and compensate plaintiffs); see also Odegard, Inc. v. Costikyan Classic Carpets, Inc., 963 F. Supp. 1328, 1341 (S.D.N.Y. 1997) (awarding $25,000 in statutory damages under the Copyright Act despite plaintiffs' failure to show that they lost profits or that the defendants benefitted financially).

As Louis Vuitton correctly notes, there also are cases in the Second Circuit in which courts have awarded $1 million for each trademark infringed.  (See Pl.'s PFOF ¶ 85) (citing Nike, Inc. v. Top Brand Co., No. 00 Civ. 8179 (KMW) (RLE), 2006 WL

7

2946472, at *3 (S.D.N.Y. Feb. 27, 2006); Phillip Morris USA, Inc. v. Marlboro Express, No. CV-03-1161, 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005); Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 521-22 (S.D.N.Y. 2004). In each of those cases, there was reason to believe that the defendant's sales were substantial. For example, in Nike there was evidence that the defendant's operations "led to the production of millions of infringing goods." Nike, 2006 WL 2946472, at *2.

Here, because Bonini has failed to participate in this suit, it is impossible to estimate the scope of its counterfeiting operation. On the one hand, it seems unlikely that Bonini would have gone to the trouble of presenting a color catalog of its "Spring 2003" line unless its sales were substantial. On the other hand, if Bonini had flooded the wholesale market with counterfeit Epi Leather handbags, Louis Vuitton presumably would have made more than one undercover purchase from a retailer.

In these circumstances, I conclude that $100,000 per trademark is an appropriate statutory damages award. The total statutory damages to be awarded for the four marks infringed consequently is $400,000.[3]

---

[3] Louis Vuitton contends that the brown Epi Leather trademark also was infringed. (Pl.'s PFOF ¶ 20). Suffice it to say, I see no evidence that there were sales of brown counterfeit handbags embodying the Epi Leather design. Accordingly, I have limited the recommended statutory damages award to $400,000.

### 2. Attorneys' Fees and Costs

The Lanham Act provides that a prevailing party may also recover "the costs of the action" and in "exceptional cases" its "reasonable" attorneys' fees. 15 U.S.C. § 1117(a). When willfulness has been established, courts consider the case to be "exceptional" within the meaning of the statute and therefore award attorneys' fees. See, e.g., Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 854 (2d Cir. 1995) ("the finding of willfulness determines the right to attorneys' fees"); see also Twin Peaks Prods. v. Publ'n Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993) (exceptional cases involve evidence of fraud or bad faith). In this case, by failing to respond to the amended complaint, Bonini has admitted that it acted "knowingly and intentionally or with a reckless disregard or willful blindness" to Louis Vuitton's trademark rights. (AC ¶ 28). Louis Vuitton consequently is entitled to recover its reasonable attorneys' fees. H.W. Carter & Sons, Inc. v. William Carter Co., 913 F. Supp. 796, 805 (S.D.N.Y. 1996) (citing Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 113-14 (2d Cir. 1988)) (fees may be awarded when party acts "willfully, intentionally and with a callous and reckless disregard for plaintiffs' rights").

In this Circuit, a party seeking such an award of attorneys' fees must support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for

Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Fee applications that do not contain such supporting data "should normally be disallowed." Id. at 1154.

Louis Vuitton alleges that it incurred attorneys' fees in the amount of $4,966.51, and it has supported its claim with a detailed declaration by its counsel to which it has attached its legal bills. (LeGrand Fee Decl. Ex. A). Although the rates of $200 or more per hour for paralegals seem high, the total of their billings is only $246 and is more than fully offset by the across-the-board discounts that Louis Vuitton's lawyers gave their client and the additional reductions to their indicated billings that counsel volunteered. I therefore find that Louis Vuitton's attorneys' fee request should be awarded in full.

The costs that a party may recover include such items as filing fees, fees for service process, and witness fees. See 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1); Local Civ. R. 54.1. Here, Louis Vuitton incurred $601.63 in such costs which it is entitled to recover. (See LeGrand Fee Decl. Ex. B)

   B.    New York Law

Punitive damages are not available under the Lanham Act. See Bartco Petroleum, 858 F.2d at 108-13 (2d Cir. 1988). However, in the context of an unfair competition claim, the Second Circuit has recognized that "New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness, . . . whether or not directed against the public generally." Getty Petroleum Corp. v. Island

10

Transp. Corp., 878 F.2d 650, 657 (2d Cir. 1989) (ellipsis in original).  Louis Vuitton suggests that it therefore should be awarded $100,000 in punitive damages.  The substantial sum that I previously have recommended as a statutory damages award under the Lanham Act includes a punitive component.  Accordingly, Louis Vuitton is not entitled to an additional award under New York law.

V.      Conclusion

For the reasons set forth above, I recommend that Louis Vuitton be awarded judgment against Bonini in the amount of $405,568.14, consisting of $400,000 in statutory damages under the Lanham Act, $4,966.51 in attorneys' fees, and $601.63 in costs.

VI.     Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John F. Keenan and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any

requests for an extension of time for filing objections must be directed to Judge Keenan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:  New York, New York
        July 21, 2009

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Theodore C. Max, Esq.
Charles LeGrand, Esq.
Sheppard Mullin Richter & Hampton LLP
Fax: (212) 332-1216

Glen Teres
Bonini Italian Handbags
283 Willis Avenue
Mineola, New York 11501
[Certified Mail]